# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EILEEN GIBSON, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | |
| STATE FARM FIRE AND CASUALTY COMPANY, | : | No. 18-4919 |
| Defendant. | : | |

## MEMORANDUM OPINION

**Timothy R. Rice**                                           February 18, 2020
**U.S. Magistrate Judge**

      This case involves an insurer's failure to timely secure its insured's written acknowledgement of a statutory right to higher Underinsured Motorist ("UIM") coverage on what the insurer stated was a "required" coverage selection form. The insurer provided the coverage selection form only after the insured suffered serious injuries, which implicated the scope of UIM coverage. Construing the insurer's policy terms in favor of the insured, I hold under Pennsylvania law that the insured is entitled to $750,000 in stacked UIM coverage.[1]

      On November 21, 2019, a jury awarded Plaintiffs Eileen and Robert Gibson $1,750,000 in damages from their insurer, State Farm, for injuries Ms. Gibson suffered in an automobile accident caused by an underinsured driver. 11/21/2019 Order (doc. 50). State Farm moved to mold the verdict, arguing the UIM policy limit was $300,000, as the Gibsons had alleged in their Complaint. Def. Mot. to Mold Verdict (doc. 52); Cmpl. ¶ 16. The Gibsons sought reconsideration of my July 19, 2019 Order granting State Farm partial summary judgment on

---

[1]     The $250,000 UIM limit is "stacked" to $750,000 because the Gibsons insured three vehicles. Def. Resp. to Pl. Mot. to Mold (doc. 58) ¶ 9.

their bad faith claim, asked to re-open discovery, and filed a Motion to Mold the Verdict to a policy limit of $750,000,[2] Pl. Mot. to Mold (doc. 56). In addition to contesting the Gibsons' Motion to Mold the Verdict, State Farm sought Remittitur of the Verdict or a New Trial. Def. Resp. to Pl. Mot. to Mold (doc. 58) ¶¶ 49–65.

I will grant the Gibsons' Motion to Mold the Verdict and deny all others.

Undisputed Facts

In addition to the fact determined by the jury—that the May 5, 2016 accident caused the Gibsons $1,750,000 in damages—the parties agree on two other operative facts. First, on April 22, 2016, Ms. Gibson signed a State Farm insurance application that listed $750,000 in stacked liability coverage and $300,000 in stacked UIM coverage. Pl. Mot. to Mold ¶ 6; Def. Resp. to Pl. Mot. to Mold ¶ 6. Second, on May 24, 2016, nineteen days after the car accident caused by an underinsured motorist, Ms. Gibson signed a "Pennsylvania Underinsured Motorist Coverage (Acknowledgement of Coverage Selection) form" acknowledging her selection of $300,000 in UIM coverage, despite her right to elect $750,000 in UIM coverage.[3] Pl. Mot. to Mold ¶ 13; Def. Resp. to Pl. Mot to Mold ¶ 13. State Farm listed the May 24 coverage selection form as "required" on the April 22 application.

---

[2] The Gibsons acknowledged that they failed to realize the possibility of $750,000 in UIM coverage, not $300,000, until after trial. The parties agree that the coverage issue was not presented to the jury and had no impact on the verdict or the trial.

[3] Although the parties dispute whether the May 24 document was signed at the Gibsons' home or at State Farm's office, Def. Resp. ¶ 4 n.1, I need not resolve this dispute because it is not relevant to the contract interpretation issue before me.

DISCUSSION

Cross-Motions to Mold the Verdict

Federal Rule of Civil Procedure 59(e) allows me to "correct a verdict that is incorrect as a matter of law." Watcher v. Pottsville Area Emergency Med. Servs., Inc., 248 F. App'x 272, 275 (3d Cir. 2007) (citing Mumma v. Reading Co., 247 F. Supp. 252, 260 (E.D. Pa. 1965)). Although the jury awarded the Gibsons $1,750,000, State Farm is responsible for only the amount of its insurance contract. See Def. Mot. to Mold Verdict, Ex. 1, Policy (agreement to provide insurance according to terms of policy); Willett ex rel. Willett v. Allstate Ins. Co., 359 F. App'x 349, 351 (3d Cir. 2009) (Allstate's contractual liability is established by terms of the policy).

Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa. C.S. § 1701, et seq. ("MVFRL"), requires all drivers to carry automobile insurance. Insurers must offer UIM and Uninsured Motorist ("UM") coverage to protect the insured when involved in an accident caused by a driver who lacks insurance or whose insurance is insufficient. Id. § 1731. Although Pennsylvania drivers are not required to carry UM/UIM coverage, insurers must offer coverage in an amount equal to the coverage purchased by the insured for bodily injury. Id. If an insured wants to purchase UM/UIM coverage in an amount less than the coverage purchased for bodily injury, that request must be made "in writing."[4] § 1734.

It is § 1734's "writing" requirement that is pivotal here. In 2011, the Pennsylvania Supreme Court found that a signed insurance application, which requested a specific UM/UIM

---

[4] Similarly, if an insured wants to decline UM/UIM coverage, an insurer is required to obtain the insured's signature on a specific form provided by the statute, § 1731, and if an insured wants to waive "stacked" UM/UIM insurance, i.e., insurance with benefits that include the total amount provided for all cars covered under one policy, the insurer also must obtain a waiver form provided by the statute, § 1738.

coverage limit less than the amount covered for bodily injury, satisfied § 1734. Orsag v. Farmers New Century Ins., 15 A.3d 896, 902 (Pa. 2011) ("Though it is laudable for insurance companies to provide additional information regarding UM/UIM insurance beyond what is found in the application, we see no purpose in requiring a separate statement when it is clear from the coverage selected that the insured intended reduced UM/UIM coverage."). The signed application in Orsag included the following language directly above the applicant's signature.

> I understand that the coverage selection and limit choices here or in any state supplement will apply to all future policy renewals, continuations and changes unless I notify you otherwise in writing.

Id. at 897.

Nevertheless, the court in Orsag reaffirmed that "requests for specific limits coverage . . . require not only the signature of the insured, but also, an express designation of the amount requested." Id. at 900–01. It reasoned that "the most effective manner in which to 'expressly designate' the amount of coverage requested is by electing a specific dollar amount on an insurance application." Id. (citing Lewis v. Erie Insurance Exchange, 793 A.2d 143, 153 (Pa. 2002)). The court further noted that appellants had "amended their insurance coverage twice in the year prior to the accident, but never questioned the amount of UM/UIM coverage."[5] Id.

The United States Court of Appeals for the Third Circuit subsequently applied Pennsylvania law and found that a signed "summary form" failed to satisfy § 1734. Freeth v. Zurich American Ins. Co., 645 F. App'x 169, 171 (3d Cir. 2016). The form expressly designated the amount of UIM coverage requested by the insured but also contained a paragraph requiring the insured to select or reject UIM coverage in Pennsylvania. Id. Although the court

---

[5] Although it was "not dispositive," the court noted that the amount of UM/UIM coverage on the application was handwritten and "suggested[ed] the amount of coverage desired was discussed and considered by appellants prior to making their selection." Id. at 901 n.1.

acknowledged that the insured had obtained "a signed writing" that listed "Selected Limits" for UM/UIM coverage, "including a limit of $35,000 for Pennsylvania," it found the writing failed to satisfy § 1734 based on the following paragraph:

> Your policy(s) contain Uninsured/Underinsured Motorists Coverage Selection/Rejection and Limits Options forms which allow you to reject coverage or to select various limits and coverage options. Your signature on this summary form indicates that you have read and understand each state-specific form and that the selections or rejections marked on the state forms have been accepted by you. This form provides a summary of the selected Limits by State. However, in those states [including Pennsylvania] marked with an asterisk (*), the first named insured must sign that state's selection/rejection form.
>
> . . .
>
> Failure to return the signed Uninsured/Underinsured Motorist (UM/UIM) Selection/Rejection Summary Form and required state-specific forms prior to the policy inception date(s) will result in the policy being issued with coverage limits imposed by operation of state law…. THIS SUMMARY IS NOT A SUBSTITUTE FOR REVIEWING EACH INDIVIDUAL STATE'S SELECTION/REJECTION FORM FOR UM AND UIM COVERAGE. *YOU ARE REQUIRED TO DO SO.*

Id. The court explained that, "[t]o any reasonable reader, the repeated emphatic warnings in the Summary Form would create an expectation that coverage amounts within a given state would be set at a level provided by law unless a form designed and submitted specifically for that state requested otherwise." Id. at 172.

The court in Freeth distinguished Orsag based on the state-specific form, noting that an insurer "need not send such a form to its insureds, nor is such a form required to reduce UM coverage under Pennsylvania law . . . [b]ut if [the insurer] warned its insured that an additional state-specific form was needed to reduce coverage and did not enclose the form (or enclosed it but never received it back), it cannot now prevail on the theory that an insured's signature on the very document that contained the warning was, in the absence of the state-specific form, a sufficient manifestation of intent to reduce coverage." Id. The court declined to decide whether a signed document with preprinted coverage amounts can ever be sufficient, but concluded that,

"[e]ven if the mere act of signing a document like the Summary Form would ordinarily suffice to reduce coverage, it did not suffice here" because the language on the Summary Form "clearly and repeatedly stated that signing the Summary Form was insufficient to effect a reduction in coverage." Id. at 173.

This case is similar to Freeth because State Farm advised Ms. Gibson on April 22 that an additional document acknowledging her UIM coverage options was "required," see Pl. Mot. to Mold, Ex. C, at 3 ("Application"), but failed to provide the required form until after the accident.

The April 22, 2016 insurance application signed by Ms. Gibson provided for stacking UIM coverage in the amount of $100,000 for each of three vehicles (totaling $300,000). Application at 2–3. It also stated the following:

> I apply for the insurance indicated and state that: (1) I have read this application, (2) my statements on this application are correct, (3) statements made on any other applications on this date for automobile insurance with this company are correct and made part of this application, (4) I am the sole owner of the described vehicle(s) except as otherwise stated, and (5) the limits and coverages were selected by me. IT IS UNDERSTOOD AND AGREED THAT NO INSURANCE IS EFFECTIVE UNDER THIS AGREEEMENT (A) UNLESS THE BINDER IS COMPLETED DESIGNATING THE COMPANY ACCEPTING THIS APPLICATION AND SIGNED BY AN AUTHORIZED AGENT OF SUCH COMPANY OR (B) UNTIL THE DATE THE POLICY OR BINDER IS ISSUED BY THE COMPANY ACCEPTING THIS APPLICATION.

Id. at 2. Directly below the applicant's signature, the application then listed "Required Documents," which included "Underinsured Motor (acknowledgement of Coverage Sel)." Id. at 3. This document was not provided to Ms. Gibson on April 22, as required. Instead, State Farm waited until May 24, 2016, nineteen days after her accident, to ask Ms. Gibson to sign the required form acknowledging her selection of lower UIM coverage. The UIM coverage selection form she signed on May 24 featured the following paragraph:

> I acknowledge and agree that I have been given the opportunity to purchase Underinsured Motor Vehicle Coverage with limits up to my Liability Coverage

>limits for bodily injury but instead I select lower limits of $100,000 (per person)/$300,000 (per accident) in lieu of the higher limits made available to me.

Pl. Mot. to Mold, Ex. D, at 1 (Acknowledgment of Coverage selection).

Pennsylvania law requires that any ambiguity in the policy documents, all of which were drafted by State Farm, must be construed in favor of the Gibsons. Bateman v. Motorists Mut. Ins. Co., 590 A.2d 281, 283 (Pa. 1991) ("Where the provision of the policy is ambiguous, the policy provision is construed in favor of the insured and against the insurer, the drafter of the instrument"); Estate of O'Connell ex rel. O'Connell v. Progressive Ins. Co., 79 A.3d 1134, 1138 (Pa. Super. 2013) (same). State Farm's reference to a "required" UIM coverage form, like the reference to the additional state-specific form in Freeth, establishes that State Farm did not believe the application alone was "a sufficient manifestation of intent to reduce coverage." See Freeth, 645 F. App'x at 172. State Farm is bound by its own "required" coverage-selection form.[6] Id.

State Farm contends that the April 22, 2016 application constituted a "request in writing" for the lower coverage amount, and that the May 24, 2016 coverage selection form merely "confirmed" the selection.[7] State Farm also does not dispute that the Gibsons increased their

---

[6] The State Farm forms differ from those in Farmland Mut. Ins. Co. v. Sechrist, 760 F. App'x 66, 68 (3d Cir. 2019). In Sechrist, the insured signed a form that specifically stated "Underinsured Motorist Coverage is available in amounts equal to or less than the limits of liability for bodily injury." Id. Although there was some ambiguity regarding the amount of coverage actually selected because a note had obscured the number during photocopying, the court found that the insured had been made aware that higher limits of UIM coverage were available. Id. at 68–69. Here, State Farm failed to advise Mrs. Gibson of the availability of higher UIM coverage equal to her liability coverage until it provided the separate coverage selection form on May 24.

[7] State Farm does not raise an estoppel argument. Def. Resp. ¶ 20. It contends that it has consistently argued since submitting its Rule 26(f) Report that its application constituted the § 7314 written notice and the May 24 document merely confirmed those selections. 2/15/2019 Report (doc. 11). State Farm asserted at oral argument that it would have offered the same legal arguments regardless of when this contract interpretation issue was raised, i.e. before, during, or

liability coverage to $250,000/$750,000 when they switched from Geico to State Farm on April 22. State Farm acknowledges that the Gibsons intended to generally increase their coverage when they changed insurers, but maintains that the $100,000/$300,000 UM/UIM policy provided that increase because the additional vehicle increased the per-incident coverage from $200,000 to $300,000. Def. Resp. to Pl. Mot. to Mold ¶ 9. Had Ms. Gibson intended to obtain UM/UIM coverage greater than the $100,000/$300,000 limit in the April 22, 2016 application, State Farm claims, she would have refused to sign the form listing coverage less than the $750,000 UIM limit that she could have elected on May 24, 2016. Id. ¶ 13.

Although the court in Orsag explained that a signed application was sufficient under § 1734 because identifying a coverage amount establishes an intent to select that amount, 15 A.3d at 901, Pennsylvania requires written notice that UIM/UM coverage is available up to the amount of liability coverage, i.e., $750,000. § 1731(a); see also Orsag, 15 A.3d at 901 ("[a]n insurance company is only required to offer UM/UIM coverage in an amount equal to the insured's bodily injury coverage . . . [and if] the insured did not desire UM/UIM coverage identical to bodily injury coverage, he could select a lesser amount and pay a reduced premium").

State Farm's reliance on Orsag ignores the ambiguity that State Farm built into its own documents. By cautioning on its application that an additional document—containing the insured's UIM coverage rights under Pennsylvania law—was "required," State Farm acknowledged that the Gibsons were entitled to more information. Although State Farm maintains its May 24 form waiving higher UIM coverage was redundant, that is only one

---

after trial. State Farm also insisted that its valuation of the case below $200,000 was reasonable and correct, notwithstanding the jury's higher valuation or the possibility of a higher UIM policy limit. Therefore, State Farm is not prejudiced by consideration of this issue now.

possible interpretation of how the April 22 application and May 24 form could be read. Equally plausible is that the more explicit description on May 24 of the Gibsons' right to higher UIM coverage was necessary to ensure the Gibsons knew that they could maintain UIM coverage equal to the $750,000 in liability coverage they had already secured. Such ambiguity must be construed against State Farm, which drafted both documents. Bateman, 590 A.2d at 283.

State Farm failed to comply with § 1734 based on the language in its own April 22 application. Motorists Ins. Companies v. Emig, 664 A.2d 559, 570 (Pa. Super. 1995) (finding no presumption that insureds were given the option of UM/UIM coverage equal to liability coverage when insurer failed to meet the requirements of both § 1731 and § 1734). Unlike the insurer in Orsag who had no coverage selection form, State Farm's application references an additional "required" coverage selection form. This suggests that the application itself was not intended to constitute an offer of UIM coverage totaling $750,000. See Freeth, 645 F. App'x at 172. Further, the required coverage selection form providing written notice of the statutorily required options was not signed until May 24. Def. Resp. to Pl. Mot. to Mold ¶ 13. State Farm failed to meet its obligation to offer the Gibsons higher coverage until May 24.[8] Emig, 664 A.2d at 570.

Motion for Reconsideration

The Gibsons also seek reconsideration of my July 19, 2019 Order granting summary judgment on their bad faith claim. Pl. Mot. to Reconsider.

The Gibsons must show at least one of the following: (1) an intervening change in the controlling law; (2) new evidence that was not available when I issued my Order; or (3) the need

---

[8] The trial evidence establishes that when State Farm had Ms. Gibson sign the form in May, she was suffering from serious injuries from the accident. Nevertheless, as of May 24, when they signed the coverage selection form, the Gibsons' UIM coverage was reduced from $750,000 to $300,000.

to correct a clear error of law. Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). The Gibsons allege no change or error of law. They argue only that the jury's verdict is new evidence that was not available when I issued my Order, and that it establishes that State Farm acted in bad faith when it failed to offer full policy limits to resolve the Gibsons' claim. Pl. Mot. to Reconsider ¶ 16.

I disagree. First, the jury's verdict is not relevant to the bad faith claim, which required the Gibsons to show by "clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claim." W.V. Realty, Inc. v. N. Ins. Co., 334 F.3d 306, 312 (3d Cir. 2003). Such evidence must be "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith," rendering "the plaintiff's burden in opposing a summary judgment motion [] commensurately high." J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004) (citing Bostick v. ITT Hartford Group, Inc., 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999) and Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999)). Evidence of a reasonable basis is all that is required to defeat a claim of bad faith. Pilosi, 393 F.3d at 367 (citing Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 307 (3d Cir.1995)).

The bad faith claim is based on the actions State Farm took or did not take to evaluate the claim when it was submitted. Cowden v. Aetna Cas. & Sur. Co., 134 A.2d 223, 229 (Pa. 1957) (bad faith claims must be assessed based on the information available to the insurer during claims processing); see also Gallatin Fuels, Inc. v. Westchester Fire Ins. Co., 244 F. App'x 424, 435 (3d Cir. 2007) (affirming bad faith claim despite upholding denial of insurance claim because bad faith claim was based on insurer's actions and justifications during claims

processing). Because a verdict rendered after State Farm had evaluated the Gibsons' claims is not relevant to bad faith, it cannot serve as a basis for reconsideration of my July 19, 2019 Order.

Nor does the failure to have Ms. Gibson sign the UIM coverage selection form until May 24 constitute bad faith. State Farm consistently maintained that the April application established the UIM policy limit, and the Gibsons had access to all relevant documents at all times. My post-trial disagreement with that determination fails to establish State Farm's bad faith.

Request to Re-Open Discovery

The Gibsons' request to re-open discovery to obtain evidence of State Farm's handling of their claim, Pl. Mot. to Reconsider ¶ 17, is also denied. The Gibsons admit that they did not request the claims handling manual during discovery and offer no persuasive justification for doing so now. Id. ¶ 18. State Farm will be prejudiced by allowing additional discovery after the jury has already rendered a verdict. See Shuber v. S. S. Kresge Co., 458 F.2d 1058, 1060 (3d Cir. 1972) (denying plaintiff's request to re-open evidence at trial because "it should certainly have been prejudicial to Defendant").

Motion for Remittitur/New Trial

State Farm also moves in the alternative for Remittitur of the Jury Verdict to $300,000 or for a New Trial under Fed. R. Civ. Pro. 59(a). Def. Resp. to Pl. Mot to Mold ¶¶ 49–65.

State Farm argues for remittitur to $300,000 on the basis that the jury's award "shocks the conscience." To justify remittitur, however, the verdict must be "inconsistent with the evidence." Cortez v. Trans Union, LLC, 617 F.3d 688, 716 (3d Cir. 2010). Courts who exercise their discretion to grant remittitur must offer the opposing party the option of a new trial to avoid "depriving the plaintiff of his/her Seventh Amendment right to a jury trial." Id. (citing Hetzel v. Prince William Cnty., 523 U.S. 208, 211 (1998) (per curiam)). A jury verdict that "shock[s] the

conscience" must be revised to preserve the due process rights of the Defendant; the Seventh Amendment right to a jury trial is not implicated. Id.

I decline to grant remittitur. Ms. Gibson's treating physician described her injuries at trial, including rib fractures, contusions, and five permanent and disabling disc herniations. State Farm ignores Ms. Gibson's testimony about the effects of those injuries on her quality of life. Ms. Gibson testified that she had led an active lifestyle and held a physically demanding job but is now restricted to only a portion of her activities and to a less-demanding job. Testimony from her colleagues and her husband corroborated her testimony. Moreover, State Farm's medical expert was impeached based on his opinion that Ms. Gibson's herniations were degenerative and merely "coincidental" to the accident. Such evidence is sufficient to support the jury's award. See Motter v. Everest & Jennings, Inc., 883 F.2d 1223, 1231 (3d Cir. 1989) (overturning remittitur because award for pain and suffering was supported by evidence despite lack of definitive diagnosis explaining allegations of pain); see also Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 573 (3d Cir. 2002) (damages award did not shock the conscience when it was based on plaintiff's testimony and testimony of others corroborating her statements).

An appropriate Order accompanies this opinion.